```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARKISHA GORDON, individually    :    CIVIL ACTION
and on behalf of all others      :
similarly situated               :
                                 :
          v.                     :
                                 :
MAXIM HEALTHCARE SERVICES,       :
INC.                             :    NO. 13-7175
```

MEMORANDUM

Bartle, J.                                              July 15, 2014

       Plaintiff Markisha Gordon ("Gordon") brings this purported class action against her former employer, defendant Maxim Healthcare Services, Inc. ("Maxim").  She seeks redress for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. Ann. § 260.1 et seq.  Gordon, a home healthcare aide, avers that Maxim was late at times in paying her.  She seeks damages for herself and all others similarly situated.

       Maxim has moved to dismiss the amended complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.

       When deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff.

Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. Planco Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

On a motion to dismiss, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

II.

The following facts are taken from the amended complaint and construed in the light most favorable to Gordon. She worked for Maxim as a home healthcare aide from October 2010 to July 2012, where she received an hourly wage in exchange for providing care to its clients. This employment relationship was not memorialized in

any written contract.  Gordon's pay period extended from Sunday through Saturday, and her payday was scheduled for the following week.  Until August 2011 that payday was on Wednesday.  After that time and until she stopped working for Maxim in July 2012, her scheduled payday was the Friday after the end of the relevant pay period.

On frequent occasions, Gordon was not paid on the scheduled payday for all of the hours worked in the previous pay period.  Rather, for reasons unknown, Maxim did not compensate her for some hours until several weeks after she worked those hours.  For example, the payday for the pay period beginning Sunday, August 28, 2011, and ending Saturday, September 3 was on Friday, September 9.  On that date, Gordon was paid $180 for 20 hours of work, but all of those hours were accumulated on August 20 and August 24.  Payment was due for that work at least one week before the date Gordon was ultimately compensated.  Gordon maintains that such late payments happened many times throughout her employment.

III.

We turn first to Gordon's FLSA claim.  The FLSA requires an employer to "pay to each of his employees who in any workweek is engaged in commerce ... wages" in an enumerated minimum amount.  29 U.S.C. § 206(a).  Under § 216(b), failure to pay the minimum wage leaves the employer liable for the unpaid wages plus an additional equal amount as liquidated damages in certain circumstances.  Id.

§ 216(b).  Maxim argues that Gordon fails to state a claim because she does not allege that the company failed to pay her but merely that it paid her late.

The language of our Court of Appeals in Martin v. Selker Brothers, Inc., 949 F.2d 1286 (3d Cir. 1991), is relevant to this issue.  In that case the Secretary of Labor brought an action under the FLSA against a distributor of gasoline who had maintained no records of the wages or hours of any of its gas station operators at six different gas stations in Pennsylvania.  Rather than an hourly wage, the distributor paid the operators a small royalty on gasoline sold.  This amount fell well below the minimum wage when the operators' hours were taken into account.

After concluding that these operators were employees under the statute and that the distributor's illegal conduct was willful, the court concluded that liquidated damages were appropriate to remedy the violation.  Id. at 1296, 1299.  In doing so, the court explained that "[t]hese liquidated damages ... compensate employees for the losses they may have suffered by reason of not receiving their proper wages at the time they were due."  Id. at 1299 (emphasis added).  Our Court of Appeals clearly contemplated that injury from lost wages under the FLSA is to be measured from the payday on which wages are ordinarily to be paid.  Id.

That court has not spoken on this question since Selker, but the Court of Appeals for the Ninth Circuit cited the Selker

decision favorably in Biggs v. Wilson, 1 F.3d 1537, 1542 (9th Cir. 1993). There the court undertook a detailed analysis of whether late payment constitutes nonpayment under the FLSA. The issue in that case was whether the State of California, in paying its highway maintenance workers 14-15 days late as a result of a budget impasse, violated the FLSA. Drawing on the language of the statute, mandatory and persuasive authority from other federal courts including Selker, the opinion of the Department of Labor, and policy considerations, the court concluded that payment at a point after payday is tantamount to nonpayment under the FLSA. Id. at 1539-44. Invited by the state to craft a balancing test to distinguish late payment from nonpayment, the court found that any such line drawing would be unworkable under the statutory scheme and detrimental to employees seeking the statute's protection.[1]  Id. at 1540.

       The language from Selker quoted above is plainly in line with the Ninth Circuit's ruling. The District Court for the Western District of Pennsylvania is in accord. See Solis v. A-1 Mortg. Corp., 935 F. Supp. 2d 778, 798 (W.D. Pa. 2013). We conclude that

---

[1] The Second Circuit has also spoken on this issue. It decided that an employer may pay its employees later than a contractually obligated payday when it does so in a good-faith attempt permanently to change its pay schedule. Rogers v. City of Troy, N.Y., 148 F.3d 52, 58 (2d Cir. 1998). While Rogers in enumerating a multi-factor test draws a softer line than Biggs, Rogers has no application in this case where Maxim is not alleged to have failed in its statutory obligations by making a permanent change to its payday.

late payment of wages is the equivalent of nonpayment for purposes of the FLSA.[2]

This may appear to be a harsh result, causing an otherwise diligent employer who misses payday by a day or two to be subject to liability under the statute.  Nonetheless, it must be remembered that the FLSA is to be liberally construed to achieve its purpose. Mitchell v. Lublin, McGaughy & Assocs., 358 U.S. 207, 211 (1959). The law is there to protect those who are receiving a minimum wage and are living from paycheck to paycheck.  A delay of a few days or a week in the remittance of wages may only be a minor inconvenience to some, but for those at the lower end of the economic scale, even a brief delay can have serious and immediate adverse consequences.

We also note that under § 260 of the FLSA an employer is only exposed to a liquidated damages award beyond the amount of back pay otherwise due if the employer fails to show "to the satisfaction of the court that the act or omission giving rise to [an FLSA minimum wage] action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act."  29 U.S.C. § 260.

Gordon's allegations of late wage payments state a claim upon which relief can be granted under the FLSA.  Maxim's motion to dismiss this claim will be denied.

---

[2] Plaintiff does not challenge the change in the payday from Wednesday to Friday.

IV.

We now address Gordon's state-law claim under the WPCL. "The WPCL 'does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement.' " Hartman v. Baker, 766 A.2d 347, 352 (Pa. Super. Ct. 2000) (quoting Banks Eng'g Co., Inc. v. Polons, 697 A.2d 1020, 1024 (Pa. Super. Ct. 1997)). The WPCL "provides employees a statutory remedy to recover wages and other benefits that are contractually due to them." Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997). It is Maxim's position that Gordon fails to state a claim upon which relief can be granted because she has not alleged the existence of any employment contract pursuant to which WPCL-protected wages are due.

Pennsylvania courts have disagreed as to whether it is a necessary prerequisite for a plaintiff to plead the existence of a contract in bringing a WPCL claim. Compare Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct. 2011) with Lugo v. Farmers Pride, Inc., 967 A.2d 963, 969 (Pa. Super. Ct. 2009). Our Court of Appeals has suggested, and the Pennsylvania Superior Court has expressly agreed in its most recent decision on the issue, that "absent a formal employment contract or collective bargaining agreement, an employee raising a WPCL claim would have to establish, at a minimum, an implied oral contract between the employee and

employer." Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954 (Pa. Super. Ct. 2011) (citing De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003)). It is therefore essential for Gordon's claim that she has pleaded facts to make the existence of at least an oral contract of employment plausible. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.

She has done so. Although Gordon did not work for Maxim according to the terms of any written agreement, she has averred that she provided services as a home healthcare aide in exchange for wages to be paid according to a week-long pay period, the payday for which followed in the next week. Gordon did not state specifically in her amended complaint that a contract existed between her and Maxim by virtue of the allegations made, but a party must plead facts, not legal conclusions, to meet our pleading standards. Skinner v. Switzer, 131 S. Ct. 1289, 1296 (2011). There are sufficient facts set forth in the amended complaint to make plausible the existence of an implied oral contract between Gordon and Maxim. Iqbal, 556 U.S. at 678; Braun, 24 A.3d at 954. Her claim does not fall short in this regard.

Maxim also challenges Gordon's state-law claim on the ground that she fails to allege that the defendant's tardy payments were sufficiently late to trigger liability. In relevant part, the WPCL requires an employer to establish and adhere to a fixed schedule for the payment of wages:

> Every employer shall pay all wages, other than
> fringe benefits and wage supplements, due to
> his employes on regular paydays designated in
> advance by the employer.... All wages, other
> than fringe benefits and wage supplements,
> earned in any pay period shall be due and
> payable within the number of days after the
> expiration of said pay period as provided in a
> written contract of employment or, if not so
> specified, within the standard time lapse
> customary in the trade or within 15 days from
> the end of such pay period.

43 Pa. Cons. Stat. Ann. § 260.3(a). As discussed above, there is no "written contract of employment" alleged in the amended complaint. Nor has any standard time lapse customary for payment of home healthcare aides been referenced. As a result, Maxim urges that Gordon's failure to allege that her pay was delayed more than 15 days after the close of any pay period is fatal to her claim.

In light of the statutory text and Pennsylvania's case law, this argument cannot carry the day. Section 260.3(a) of the WPCL first requires an employer to pay his or her employees on regular paydays, and those paydays must be "designated in advance by the employer." Id. This designation can be done in three ways. Absent a written contract or standard time lapse customary in the trade, the employer must designate in advance a regular payday "within 15 days from the end of such pay period." Id.

This was the conclusion of the Commonwealth Court in Emgee Engineering Co. v. Unemployment Compensation Review Board, 373 A.2d 779, 782 (Pa. Commw. Ct. 1977). That case concerned three appeals

by the Emgee Engineering Company from orders of the Unemployment Compensation Board relating to the failure of Emgee to make timely payment of wages to several employees on an orally agreed-upon payday.  Payments were up to five days late.  Interpreting § 260.3, the court explained:

> Taken out of context, [the statute] arguably would give an employer his choice of any of 15 days from the end of a pay period to make payment after each and every pay period.  However, this completely ignores the first sentence of Section 3 [§ 260.3(a)]....  These two provisions can be reconciled only if the third sentence of the Section is viewed as establishing the range of days or limits within which an employer may designate the regular payday.  Once designated, the employer's duty to make payment of wages on that day is fixed.  There is no doubt in the present case that the chosen payday was missed on several occasions and was legally late.

Id. (footnote and quotation marks omitted).

Gordon's WPCL claim is substantially similar to Emgee.  Maxim designated regular paydays falling on the Wednesday immediately after the end of the pay period and, later, the Friday immediately after the end of the pay period.[3]  Thus the designated days were within the 15-day period allowed under the WPCL.  The problem, however, is that Maxim allegedly failed to pay Gordon "all wages" due on those designated paydays and instead remitted portions of Gordon's compensation at least a week later.  43 Pa. Cons. Stat.

---

[3] As with respect to her FSLA claim, plaintiff does not challenge the change in the payday from Wednesday to Friday.

Ann. § 260.3(a) (emphasis added).  As in Emgee, these alleged late payments do not comply with the WPCL.  Maxim's motion to dismiss cannot be granted on this basis.

Maxim's final attack on Gordon's WPCL claim is to cite the applicable statute of limitations, which provides that "no ... legal action shall be instituted under the provisions of this act for the collection of unpaid wages or liquidated damages more than three years after the day on which such wages were due and payable under Sections 3 and 5 [§§ 260.3 and 260.5]."  43 Pa. Cons. Stat. Ann. § 260.9a(g).  The original complaint was filed on December 9, 2013 and the amended complaint on April 9, 2014.

Under Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure, an amended pleading relates back to the date of the original pleading for limitations purposes when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  Applying this rule requires a "search for a common core of operative facts in the two pleadings."  Glover v. F.D.I.C., 698 F.3d 139, 145 (3d Cir. 2012) (quoting Bensel v. Allied Pilots Ass'n, 387 F.3d 298, 310 (3d Cir. 2004)).  "The touchstone for relation back is fair notice."  Id. at 146.

The original complaint here took issue with Maxim's alleged failure to pay Gordon overtime wages.  After the initiation

-11-

of the action, Maxim provided proof to Gordon that she had been paid overtime, and she now avers that her employer failed to pay for hours worked on the next regularly scheduled payday.  While this newly alleged conduct also arises from Gordon's employment by Maxim and its failure to pay her earned wages, it is based on factually and legally distinct circumstances.  Indeed, there is a significant disparity in the averments in Gordon's pleadings.  Looking at the original complaint, Maxim did not have fair notice of the claims its former employee currently makes.  <u>Glover</u>, 698 F.3d at 146.  The statute of limitations will be measured from the date of the filing of the amended complaint, April 9, 2014, and Maxim's motion to dismiss will be granted as to Gordon's WPCL claims for all wages due and payable on or before April 9, 2011.

V.

In sum, Gordon has pleaded sufficient factual matter to make a claim for relief plausible under both the FLSA and the WPCL.  Her claim under the WPCL will be dismissed as to any wages due and payable on or before April 9, 2011.  The motion of Maxim to dismiss the amended complaint will otherwise be denied.