```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA


MARKISHA GORDON, individually    :      CIVIL ACTION
and on behalf of all others      :
similarly situated               :
                                 :
           v.                    :
                                 :
MAXIM HEALTHCARE SERVICES,       :
INC.                             :      NO. 13-7175
```

MEMORANDUM

Bartle, J.                                         December 11, 2014

Plaintiff Markisha Gordon ("Gordon") brings this putative class action against her former employer, defendant Maxim Healthcare Services, Inc. ("Maxim"). Gordon, a home healthcare aide, avers that Maxim was late at times in paying her and other employees. Gordon challenges this practice of late payment as a violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. Ann. § 260.1 et seq. She seeks damages for herself and all others similarly situated. Before the court is the motion of Gordon to certify conditionally a collective action under § 216 of the FLSA to include all Maxim employees in the United States at any time since April 10, 2011 who were not paid on their regular payday for work performed during the applicable pay period.

I.

FLSA violations affecting multiple employees may be redressed in a collective action. 29 U.S.C. § 216(b); Hoffman-LaRouche v. Sperling, 493 U.S. 165, 169-71 (1989). Unlike traditional class actions, however, each allegedly wronged employee must elect to join the class of claimants. 29 U.S.C. § 216(b). Due to this "opt-in" requirement, FLSA plaintiffs may be unable to identify other claimants without the benefit of notice to the putative class and discovery. Sperling v. Hoffman-LaRouche, 118 F.R.D. 392, 406 (D.N.J. 1988), aff'd 862 F.2d 439 (3d Cir.), aff'd 493 U.S. 165 (1989). As a result, in cases such as this, courts follow a two-step procedure in determining whether to certify a collective action under § 216. Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012).

At the first step, the court determines whether the plaintiff has made a preliminary showing that his or her claims are similar to the claims of the members of the putative class. Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3d Cir. 2011) rev'd on other grounds by Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013). The first step usually occurs early in the litigation to facilitate notice and discovery. Bamgbose v. Delta-T Grp., Inc., 684 F. Supp. 2d 660, 667-68 (E.D. Pa 2010). At the second step, typically after the close of class-related discovery, the court

reconsiders class certification in light of the more developed factual record.  Id. at 668.

In this first stage of the analysis, before notice and discovery, we require only that the plaintiffs make a "modest factual showing" that their claims are similar to other potential class members.  Symczyk, 656 F.3d at 193.  That is, "a plaintiff must produce some evidence, 'beyond pure speculation,' of a factual nexus between the manner in which the employer's alleged policy affected [him or] her and the manner in which it affected other employees."  Id. (quoting Smith v. Sovereign Bancorp, Inc., Civil Action No. 03-2420, 2003 WL 22701017, at *3 (E.D. Pa. Nov. 13, 2003)).  Ultimately the showing must be enough to persuade the court to exercise its "discretionary power ... to facilitate the sending of notice to potential class members."  Id. at 194 (quoting Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010)).

In the context of FLSA collective actions, "similarity" between class members' claims means that the class members share common "terms and conditions" of employment, which may be shown through the existence of a "common policy, plan, or practice." Bramble v. Wal-Mart Stores, Inc., Civil Action No. 09-4932, 2011 WL 1389510, at *4 (E.D. Pa. Apr. 12, 2011).  On the other hand, evidence that each class member's claim will hinge on his or her "specific circumstances" weighs against conditional certification. Id.  We also consider whether the plaintiffs and class members would

use the same evidence to prove their claims.  See Bamgbose, 684 F. Supp. 2d at 668-69.

In recognition of the early stage of the case, the burden of making a modest factual showing is "fairly lenient," but it is "not nonexistent."  Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013); Bramble, 2011 WL 1389510, at *4 (quoting Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).  Thus, plaintiffs must come forward with some facts from which the court may infer similarities between the plaintiff's claims and those of putative class members.  The court may appropriately consider, without weighing the evidence or accepting the substance of any declarations, the totality of the record available to determine whether the plaintiff has met his or her burden.  Bramble, 2011 WL 1389510, at *5 n.6.

II.

Gordon worked for Maxim as a home healthcare aide from October 2010 to July 2012.  Her pay period extended from Sunday through Saturday, and her payday was scheduled for the following week.  In her amended complaint, Gordon alleges that on frequent occasions she and other Maxim employees were not paid on the scheduled payday for all of the hours worked in the previous pay period.  Rather, Maxim did not compensate her for some hours until several weeks after she worked those hours.

The court previously concluded in ruling on Maxim's motion to dismiss that Gordon's allegations of late payment are sufficient to state a claim for nonpayment of wages under the FLSA. <u>Gordon v. Maxim Healthcare Servs., Inc.</u>, Civil Action No. 13-7175, 2014 WL 3438007, at *3 (E.D. Pa. July 15, 2014). It further determined that the statute of limitations precluded Gordon from seeking recovery for any wages due on or before April 9, 2011. <u>Id.</u> at *5. Maxim has since produced a 48-page list of all of its hourly employees in Pennsylvania who were paid beyond their scheduled pay dates from April 29, 2011 to April 15, 2012.

Gordon worked remotely at third-party client sites. She has submitted an affidavit that she was paid after her scheduled pay date. Her affidavit details Maxim's requirement that she submit timesheets signed by the clients to whom she was providing care. Maxim required her physically to deliver these timesheets each week to a Maxim office before she could be paid on time. She was not permitted to fax the documents. The closest Maxim office to her home was in Trevose, Pennsylvania, roughly 15 miles away. She did not drive but rather used public transportation. It would usually take Gordon at least one hour and fifteen minutes to make the trip to submit her timesheets and sometimes up to two hours if traveling from more distant client sites.

Another affiant, Sandra Cataldi, worked for Maxim from February 2007 to July 30, 2012. She does not state what position

she held, although it can reasonably be inferred that Cataldi, like Gordon, worked at remote client sites since she reported to the Maxim offices in York and Harrisburg.  Maxim also required her to submit timesheets by hand rather than allowing her to send faxes.  She would not be paid on the normal payday for the hours she had worked in the preceding pay period if she did not submit her timesheets in this manner.  In addition, she was not permitted to submit to one office the timesheets for work performed out of another office.

Maxim's Employee Handbook simply requires that timesheets be accurately filled out by the employee and signed by an authorized person at the client site.  It is silent on how those timesheets are to be collected.  Indeed, seven Maxim employees, each from different Maxim offices in Pennsylvania and each responsible for overseeing his or her office's payroll processes, disagree with Gordon's and Cataldi's assertion that they were required to submit timesheets in person.  None of these employees has any knowledge of a Maxim policy requiring an employee to turn in his or her timesheet by hand.  They further explain that, while faxing the timesheets is sometimes prohibited in order to protect confidential client information, personnel working remotely are permitted in their offices to submit timesheets by means other than in person, including mail, drop box, or telephone.

III.

We turn to the question whether Gordon has made a modest factual showing that there is a nexus between her claims and the potential claims of other Maxim employees who were not paid on their regular payday.  Gordon argues that her affidavit, the affidavit of Cataldi, and the list of late-paid employees produced by Maxim demonstrate that remote employees worked "under a common policy applicable to all home healthcare aides" which resulted in a systematic failure by Maxim to meet the FLSA requirement of timely payment.

Maxim responds that nothing in either of the plaintiff's affidavits shows that the requirement to deliver timesheets by hand was imposed on anyone other than Gordon and Cataldi.  Furthermore, there is no company-wide Maxim policy that controls each office's method of marshaling its employees' timesheets.  Thus, according to Maxim, any class action would quickly overburden the court with the management of a profusion of factually dissimilar claims.

Maxim's position does not carry the day.  We emphasize that the case is in an early stage and the plaintiff's burden to make a modest factual showing is accordingly lenient.  At its core, this case deals with the issue of late payment of employees. Camesi v. Univ. of Pittsburgh Med. Ctr., 729 F.3d 239, 243 (3d Cir. 2013). Gordon and Cataldi have filed affidavits that they were not paid on time.  We also have in the record a long list of Maxim's hourly

-7-

Pennsylvania employees who were paid late. We conclude that Gordon at this stage has produced sufficient evidence of a factual similarity between Maxim's payment practices as to her and as to other employees. Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 193 (3d Cir. 2011) rev'd on other grounds by Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523 (2013). A more definite determination whether the putative class is indeed similarly situated can be made at the second step of the FLSA certification framework with the benefit of additional discovery.

We still must decide the scope of the putative class. Gordon has given numerous, shifting descriptions of the class she seeks, the broadest of which includes all Maxim employees anywhere in the United States not timely paid for work during the applicable pay period from April 10, 2011 through the date of trial. Maxim strongly contests such an expansive class definition and argues that it should be limited to home healthcare aides in Pennsylvania.

We agree with Maxim. While Gordon's burden at this stage is lenient, it is not nonexistent. Bramble, 2011 WL 1389510, at *4. She has produced no evidence of any kind concerning Maxim employees outside Pennsylvania. Nor do the affidavits she has submitted suggest any Maxim policy applicable to employees other than home healthcare aides who work outside of the company's offices. Indeed, Gordon herself states in her brief in support of the instant motion that "Maxim, under a policy applicable to all home healthcare aides,

-8-

systematically failed to pay Plaintiff and members of the class on their scheduled [p]ayday." (emphasis added).  Accordingly, conditional class certification will be granted only as to all home healthcare aides employed by Maxim in Pennsylvania and who were paid beyond scheduled pay dates that fell on or after April 10, 2011.[1]

---

[1] We are unpersuaded by Maxim's contention that this would constitute an impermissible "fail-safe" class, that is, a class the membership of which is defined by a violation of law.  Fail-safe classes are frowned upon in Rule 23 cases because a determination of who belongs in the class in turn depends upon a potentially burdensome adjudication of the merits of each prospective member's claim.  See Lipstein v. UnitedHealth Grp., 296 F.R.D. 279, 291 (D.N.J. 2013).  This is not of concern in this case where class membership is readily and objectively ascertainable on the basis of payroll records regardless of whether such evidence also speaks to the strength of individual prospective members' cases.